850 A.2d 524

ZAIDA GARZON, PETITIONER–APPELLANT, v. BOARD
OF REVIEW, DEPARTMENT OF LABOR,
RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted April 20, 2004—Decided June 14, 2004.

Before Judges STERN, A.A. RODRÍGUEZ and PAYNE.

*Zaida Garzon,* petitioner pro se.

*Peter C. Harvey,* Attorney General, attorney for respondent (*Patrick DeAlmeida,* Deputy Attorney General, of counsel and *Ellen A. Reichart,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

PAYNE, J.A.D.

In this action seeking unemployment compensation benefits, petitioner Zaida Garzon appeals from a final administrative determination of the Board of Review dismissing her appeal from an adverse decision rendered by the Appeal Tribunal. The Board's determination was based on the ground that the appeal was not timely under *N.J.S.A.* 43:21–6(c), which provides that the Tribunal's decision shall be deemed to be the final decision of the Board of Review unless, within ten days after notification or mailing of the Tribunal's decision, a further appeal is initiated. We reverse and remand petitioner's appeal for a determination as to whether good cause for the late filing can be demonstrated. We do so because we find that a form letter, forwarded to Garzon when it

was determined that her appeal was late, did not adequately advise her that the Board of Review would relax its time limitations if "good cause" for doing so were demonstrated, and the "Timeliness Certification" accompanying that letter did not pose questions clearly designed to elicit the facts necessary to establish good cause. If the need to obtain information sufficient to determine whether good cause has been demonstrated is to be met through the use of a certification, then that certification and the instructions accompanying it should be revised.

Petitioner Garzon, a former employee of Pomerantz Staffing Services, L.L.C., filed a claim for unemployment compensation benefits on April 21, 2002 alleging that she had been laid off on April 19, 2002. A deputy claims examiner determined that Garzon was entitled to benefits from April 21, and he notified Garzon and her employer of his decision on July 16, 2002. On July 26, Pomerantz filed an appeal from the determination with the Appeal Tribunal. A telephonic hearing was held before that Tribunal on September 3, 2002. However, Garzon did not participate. On September 24, a decision was issued by the Appeal Tribunal holding Garzon disqualified for benefits from April 14, 2002 because, it found, she left work voluntarily without good cause attributable to such work. *N.J.S.A.* 43:21–5(a). The matter of Garzon's potential liability for refund of benefits already received was remanded to the Director for "an initial determination in accordance with established procedures." We have not been informed whether a refund has been demanded.

Page three of the Tribunal's decision contained the following in both English and Spanish: [1]

IMPORTANT: This decision will become final, unless, within ten (10) days of the date of mailing or notification, a written appeal is filed with the Board of Review, Department of Labor, Labor Building, PO Box 937, Trenton, New Jersey 08625–0937. If the last day allowed for the appeal occurs on a Saturday, Sunday or legal

---

[1] We have no information with respect to Garzon's nationality or her familiarity with the English language. We thus do not address any issues of due process potentially arising from a lack of facility in English.

holiday, the appeal will be accepted if received or postmarked on the next business day. The appeal period will be extended if good cause for late filing is shown. Good cause exists in situations where it can be shown that the delay was due to circumstances beyond the control of the appellant which could not have been reasonably foreseen or prevented. . . .

On Tuesday, October 8, 2002, Garzon filed an appeal from the decision of the Appeal Tribunal with the Board of Review, four days after the mandated filing date of Friday, October 4, 2002.

On December 6, 2002, the Board of Review sent Garzon a letter that stated:

According to our records, your appeal of the Appeal Tribunal decision was filed beyond the ten (10) day period allowed for a timely appeal to the Board of Review. If an appeal is not filed in a timely manner, the Board of Review does not have the jurisdiction to review the case on its merits.

Therefore, please complete the enclosed certification (# 1 to # 3) as to the date you received the Appeal Tribunal decision and when you filed your appeal. As soon as possible, return the form in the enclosed self-addressed envelope, which requires postage.

If we do not receive a response within seven (7) days from the date of this letter, we will review your case on the information available.

Very truly yours,

/s/ FRANK SERICO

EXECUTIVE SECRETARY

. . .

NOTE: IF YOU DID NOT APPEAR AT THE APPEAL TRIBUNAL HEARING, PLEASE COMPLETE # 4 AND # 5 as well.

The "Timeliness Certification" was returned to the Board of Review on December 12, 2002. As completed, it read in relevant part:

1–I certify that I received the Appeal Tribunal decision on

**09–24–2002   on Hackensack**[2]

2–I filed my appeal on

**2nd appeal October 08–2002 Hackensack**

3–My appeal was filed on the above date because

**I don't quit my job they are give me lay off on 04–19–02**

4–I did not appear at the Appeal Tribunal hearing because

**I was in my house that date in that time and a never hiring my fone ringing.**

---

[2] Responses are in bold type.

5–If another hearing is held, I will *X* I will not _____ appear (please check one of the above).

The "good cause" exception to time limitations on appellate filings imposed in unemployment benefit actions, now codified at *N.J.A.C.* 12:20–4.1(h),[3] arose from the Supreme Court's decision in *Rivera v. Board of Review*, 127 *N.J.* 578, 606 *A*.2d 1087 (1992). In that case, Rivera, a Puerto Rican migrant worker employed in New Jersey who had temporarily relocated in the off-season from his home in Puerto Rico to Pennsylvania, did not receive timely notice of a demand for repayment of benefits by the New Jersey Department of Labor, and as a result, he filed his appeal with the Appeal Tribunal nine days after the ten-day deadline set forth in *N.J.S.A.* 43:21–16(d). Although an administrative hearing on the appeal was held, the Appeal Tribunal declined to hear the appeal on its merits, finding that the ten-day period for filing appeals was jurisdictional. The Supreme Court reversed on procedural due process grounds, ordered the Department to consider the merits of Rivera's appeal, and "to promptly promulgate regulations that assure that migrant farm workers are provided with adequate notice of agency determinations." *Id.* at 590–91, 606 A.2d 1087.

In reaching its decision, the Court recognized that "state statutes providing for the payment of unemployment compensation benefits create in the claimants for those benefits property interests protected by due process." *Id.* at 584, 606 *A*.2d 1087 (quoting *Wilkinson v. Abrams*, 627 *F*.2d 650, 664 (3d Cir.1980)). It recognized further that, in the context of the case before it, due process required both adequate notice and an opportunity to be heard. *Rivera, supra,* 127 *N.J.* at 583, 606 *A*.2d 1087. Although the

---

[3] The regulation provides:

A late appeal shall be considered on its merits if it is determined that the appeal was delayed for good cause. Good cause exists in circumstances where it is shown that:

1. The delay in filing the appeal was due to circumstances beyond the control of the appellant; or

2. The appellant delayed filing the appeal for circumstances which could not have been reasonably foreseen or prevented.

Court acknowledged our decision in *Lowden v. Board of Review,* 78 *N.J.Super.* 467, 189 *A.*2d 224 (App.Div.1963) holding that the process due unemployment benefit claimants was defined and limited by State statute, thereby requiring strict adherence to the statute's ten-day filing requirement, the Court observed that its "understanding of property rights and the nature of due process has evolved significantly" since *Lowden* was decided in 1963. *Rivera, supra,* 127 *N.J.* at 585, 606 *A.*2d 1087. In the Court's view, "strict adherence to limitation periods without regard to their underlying purposes disserves the goals of justice." *Ibid.* (summarizing the holding of *White v. Violent Crimes Compensation Bd.,* 76 *N.J.* 368, 376, 388 *A.*2d 206 (1978)). "Rather than being jurisdictional, the notice statute, *N.J.S.A.* 43:21–16(d), serves to implement or execute the due process protections mandated by the United States and New Jersey constitutions." *Rivera, supra,* 127 *N.J.* at 586, 606 *A.*2d 1087.

In determining the scope and nature of due process protections to be accorded in the context of the case before it, the *Rivera* Court utilized the tripartite balancing test set forth in *Mathews v. Eldridge,* 424 *U.S.* 319, 335, 96 *S.Ct.* 893, 903, 47 *L.Ed.*2d 18, 33 (1976), by which the individual and governmental interests involved are weighed against the costs of different types of procedure. *Rivera, supra,* 127 *N.J.* at 589, 606 *A.*2d 1087. *See also, e.g., J.E. on Behalf of G.E. v. State of New Jersey,* 131 *N.J.* 552, 566, 622 *A.*2d 227 (1993). In undertaking this analysis, the Court gave significant weight to an individual's interest in avoiding a wrongful order to repay, whereas it found little to justify the Department's inflexible application of the ten-day filing requirement. As a consequence, in the part of its holding that is relevant to the present case, the Court found necessary an allowance for good cause exceptions, but it left to the discretion of the Department the manner in which those exceptions would be recognized. *Id.* at 590, 622 *A.*2d 227. The Department's response to the Court's mandate, formulated for use in connection with appeals governed by *N.J.S.A.* 43:21–6(c), has been illustrated earlier in this opinion.

We hold that the Department's procedures are inadequate to meet the due process standards recognized in *Rivera*, since the Department's transmittal letter does not apprise a recipient such as Garzon of the existence and nature of the good cause exception to the ten-day filing requirement, and its "Timeliness Certification" is not designed to elicit the information necessary to establish whether good cause for relaxation of the requirement exists.

In deciding the case as we do, we do not seek to limit the means by which the Department can inform a tardy appellant of the good cause exception mandated by *Rivera*. We find only that, in a setting such as this in which many applicants are uncounseled,[4] the notice must be contemporaneous with any denial of an appeal based upon lack of timeliness, and it must be obvious and clear. Otherwise, the good cause exception could be administratively buried in a fashion that would wholly undercut the thrust of the *Rivera* decision and its due process underpinnings. Because, following *Rivera*, the Department chose a transmittal letter and "Timeliness Certification" as its method of communicating the good cause exception, it is those documents that we address.

We find that a recipient of the Department's paired communications could easily be misled as to their import, as Garzon evidently was. The initial language of the transmittal letter sets forth, in clear enough language, that the subject appeal was filed beyond the ten-day period that is allowed, together with the Board of Review's position that it lacks jurisdiction to review an untimely appeal on the merits. However, the Board neglects to mention that a good cause exception to the filing requirement exists or what that exception entails. The transmittal letter merely instructs the applicant to "complete the enclosed certification (# 1 to

---

4 "The touchstone of adequate process is not abstract principle but the needs of the particular situation." *Rivera, supra,* 127 *N.J.* at 583, 606 *A.*2d 1087 (citing *Morrissey v. Brewer,* 408 *U.S.* 471, 481, 92 *S.Ct.* 2593, 2600, 33 *L.Ed.*2d 484, 494 (1972). Here, we find the nature of the labor market and the manner in which applications for unemployment benefits are perfected require the protections that we have set forth.

# 3)." No instruction is given as to what information should be supplied. The absence of instruction is significant in connection with Item # 3, which we gather, is intended to elicit the factual basis for any good cause claim.

Moreover, the letter's instruction to the recipient to answer further questions permits the inference that the appeal will be heard nonetheless. This inference is strengthened by the concluding paragraph of the letter, which states that if a response is not received within seven days, the case will be "reviewed" on the basis of available information. It is reinforced again in the transmittal letter's concluding note, which requires those who did not appear at the Appeal Tribunal hearing initially to certify to the reason for nonappearance and to indicate whether they would appear if another hearing were held.

Turning to the "Timeliness Certification," we note nothing to suggest to a tardy appellant the existence or nature of a good cause exception to the filing deadline. Moreover, its crucial Item # 3, which states: "My appeal was filed on the above date because _____," provides no hint whatsoever as to the type of information required or the reason for the question. In the case before us, Garzon responded substantively, stating in essence that she did not quit, but was instead laid off. In the circumstances, we cannot find her interpretation of the question unreasonable.

To be sure, the existence of a good cause exception to the filing deadline for appeals to the Board of Review is set forth in small print on the third page of the previously-forwarded decision of the Appeal Tribunal. We find that non-contemporaneous notice to be insufficient in circumstances such as this in which virtually all applicants for benefits are known to be proceeding without the benefit of a lawyer, and many, such as Garzon, appear untutored.

It is possible to argue that an adequate explanation to an applicant for unemployment insurance benefits of how to take advantage of the good cause exception crafted by the Court in *Rivera* is not required by due process. We have found no authority to say that it is. Nonetheless, it appears inconceivable

to us that the Supreme Court would find the good cause exception to be required as the result of due process considerations, but would deny, as not constitutionally required, a *pro se* applicant's right to know that the exception existed and how to seek to comply with it. At very least, fundamental fairness demands such disclosure. *See J.A. v. Board of Educ. for the Dist. of So. Orange,* 318 *N.J.Super.* 512, 525, 723 *A.*2d 1270 (App.Div.1999).

Moreover, in the circumstance, we view an analysis under fairness principles to coincide with a procedural due process analysis, since at its core, due process calls for those procedural protections that fairness demands. *See, e.g., New Jersey Dept. of Labor v. Pepsi–Cola Co.,* 336 *N.J.Super.* 532, 536, 765 *A.*2d 760 (App.Div.) (quoting *Mettinger v. Globe Slicing Mach. Co.,* 153 *N.J.* 371, 389, 709 *A.*2d 779 (1998)), *aff'd,* 170 *N.J.* 59, 784 *A.*2d 64 (2001). *See also Rivera, supra,* 127 *N.J.* at 583, 606 *A.*2d 1087 ("Put simply, the citizen facing a loss at the hands of the State must be given a real chance to present his or her side of the case before a government decision becomes final.")

In a different context, the Supreme Court has held:

At a minimum, due process requires that a party in a judicial hearing receive "notice defining the issues and an adequate opportunity to prepare and respond." *McKeown–Brand v. Trump Castle Hotel & Casino,* 132 *N.J.* 546, 559, 626 *A.*2d 425 (1993) (citing *Nicoletta* [*v. North Jersey Dist. Water Supply Comm'n,* 77 *N.J.* 145, 162, 390 *A.*2d 90 (1978) ]. As we stated in *Nicoletta,* " '[t]here can be no adequate preparation where the notice does not reasonably apprise the party of the charges, or where the issues litigated at the hearing differ substantially from those outlined in the notice.' " *Supra,* 77 *N.J.* at 162, 390 *A.*2d 90 (quoting *Department of Law and Pub. Safety v. Miller,* 115 *N.J.Super.* 122, 126, 278 *A.*2d 495 (App.Div.1971)). [*H.E.S. v. J.C.S.,* 175 *N.J.* 309, 321–22, 815 *A.*2d 405 (2003) (discussing scope of procedural due process protections required in a domestic violence proceeding).]

We find the Court's language to apply aptly to the present situation, in which an appellant, contesting the denial of unemployment insurance benefits in an untimely appeal, is sent correspondence that does not inform her of what may render her appeal effectively timely or that she must present facts relevant to the issue of timeliness in certified form in order for her appeal to be reconsidered, but instead consists of instructions and forms that

are wholly unfocused in their content and are easily susceptible to misinterpretation.

We have recently framed the weighing process required in a procedural due process analysis of this type, set forth in *Mathews, supra,* 424 *U.S.* at 335, 96 *S.Ct.* at 903, 47 *L.Ed.*2d at 33 and adopted in *Rivera, supra,* 127 *N.J.* at 589, 606 *A.*2d 1087, in this fashion:

> The protections needed to ensure due process where governmental action is to be taken depend on a careful balancing of three factors: (1) identification and specification of the private interest that will be affected by the official action; (2) assessment of the risk that there will be an erroneous deprivation of the interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) evaluation of the governmental interest involved, including the added fiscal and administrative burdens that additional or substitute procedures would require.
>
> [*Division of Youth and Family Servs. v. M.Y.J.P.,* 360 *N.J.Super.* 426, 465, 823 *A.*2d 817 (App.Div.), *certif. denied,* 177 *N.J.* 575, 832 A.2d 325 (2003).]

*See also, e.g., In re Commitment of B.L.,* 346 *N.J.Super.* 285, 303, 787 *A.*2d 928 (App.Div.2002). Much of the analysis required by this test has already been performed by the Court in connection with its decision in *Rivera, supra,* 127 *N.J.* at 589–90, 606 *A.*2d 1087. We add only that in the present context and for the reasons that we have stated previously, the risk of an erroneous deprivation of the rights of disappointed applicants for unemployment insurance is high and the probable value of added procedural protections is great.

We do not mean to imply by this decision any opinion on our part as to whether Garzon can meet the standard of good cause recognized by the Court to exist in this context. We do not know, because Garzon (like, we suspect, many others) was inadvertently misled as to the nature of the information that she was required to provide.

We accordingly reverse the determination of the Board of Review. We order the Department to reconsider the timeliness of Garzon's appeal following her response to a suitably framed good cause inquiry.