606 A.2d 1087

ANGEL RIVERA, CLAIMANT-APPELLANT, v. BOARD
OF REVIEW, NEW JERSEY DEPARTMENT OF
LABOR, RESPONDENT-RESPONDENT.

Argued March 16, 1992—Decided June 2, 1992.

*Keith G. Talbot* argued the cause for appellant (Camden Regional Legal Services, Inc., Farm Worker Division, attorney).

*John C. Turi,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Mary C. Jacobson,* Deputy Attorney General, of counsel).

*Margaret Stevenson* argued the cause for *amicus curiae,* Legal Services of New Jersey (*Melville D. Miller, Jr.,* President, attorney; *Melville D. Miller, Margaret Stevenson, Madeline Houston* and *Theodore Gardner,* on the brief).

The opinion of the Court was delivered by

HANDLER, J.

This case concerns a migrant farmworker who received unemployment benefits from the Department of Labor but was later determined to have been ineligible. Notice of the determination and demand for the repayment of benefits was sent to

plaintiff during the farming season at his off-season address and as a result did not reach him until the period for an appeal had expired. The question raised by the case is what minimum-notice rules are necessary to assure that a recipient of unemployment benefits knows that an initial determination of ineligibility has been made and has sufficient time to exercise his or her right to appeal before that determination becomes final.

## I

Angel Rivera is a migrant farm worker. Like thousands of other temporary farm workers he is hired in the spring and laid off in the fall. Each April for fifteen years, Rivera traveled from Puerto Rico to New Jersey to work as a laborer at the same farm in Vineland. When the season ended in November, his employment would terminate and he would return to his home in Puerto Rico. During the eight months each year that Rivera worked in New Jersey, he contributed a portion of his wages to the unemployment insurance system.

In November, when the 1988 season had ended, Rivera applied for unemployment benefits from the New Jersey Department of Labor (Department). During the fall and winter, he received benefits totaling $2,030. The checks were sent to his address in Puerto Rico. When his benefits expired in March, Rivera, then aged sixty-six, moved to Pennsylvania to visit his ill mother and search for seasonal farm work. Because the Department had a policy of not updating addresses after benefits ran out, Rivera did not provide them with his temporary address. He did, however, arrange for his daughter to forward his mail from Puerto Rico to his temporary address in Pennsylvania.

On May 25, 1989, one month after the 1989 farm season in New Jersey had begun, the Department sent three forms to Rivera at his Puerto Rico address: a "Demand for Repayment," a "Schedule of Overpayments," and an "Important Information notice." The latter notice informed Rivera that he had been

ineligible for benefits since November 1988 on the grounds that he was "unavailable for work." The notices were sent to Rivera because the Department came to believe that he had refused to seek full-time employment in order to preserve his social security benefits. The import of the notices was that absent a timely appeal, Rivera would be obligated to return all funds he had received since November 1988. All three notices were written in English. They were accompanied by a fourth notice in Spanish, which stated (inaccurately) that he had been declared ineligible for benefits due to having been out of the area travelling to another state.

In the right corner of the Important Information notice was the warning:

> Any appeal from the determination must be submitted in writing within 10 days from the date of mailing. Final date to file appeal is 6/05/89.

When the notice arrived, Rivera's daughter telephoned him in Pennsylvania and at his request immediately forwarded the papers to him. Rivera is illiterate—he neither reads nor writes Spanish—and cannot understand English. He received the forwarded notice on June 12, 1989. Two days later, on June 14, 1989, after having the notice translated into Spanish, Rivera filed an appeal asserting that the Department's eligibility determination was incorrect. Rivera asserted that contrary to the determination of the Department, he had sought full time employment and would accept such work even if it meant a reduction in his social-security payments.

An administrative hearing on Rivera's appeal was held before the Appeal Tribunal of the Department on January 30, 1990. The Appeal Tribunal declined to hear the appeal on the merits because it had not been filed in a timely manner as required by *N.J.S.A.* 43:21–16(d). *N.J.S.A.* 43:21–16(d) provides:

> Unless such a person [who allegedly improperly receives unemployment benefits], within seven calendar days after the delivery of such determination [that he has improperly received benefits], or within 10 calendar days after such notification was mailed to his last-known address, files an appeal from such determination, such determination shall be final.

The tribunal found as a matter of fact that Rivera had left Puerto Rico on March 25, 1989, that his daughter had forwarded the notice to him in Pennsylvania, and that he had sought assistance from a civic association to understand the documents and file an appeal. Nonetheless the tribunal concluded that it could not hear his appeal:

> As the claimant's appeal was not filed within ten (10) days of the date of mailing, namely June 4, 1989, the determination became final and the Appeal Tribunal does not have *jurisdiction* to review the issues on their merits. (emphasis added)

The Board of Review of the Department affirmed the tribunal's decision. Rejecting the argument that delivery had occurred when the notices were forwarded to Pennsylvania, the Board held that "delivery occurs when a determination is deposited in a claimant's mailbox at the address he has provided to the Division." The Board held that it had no power to allow Rivera a good cause extension and that it was not required under the Farmworker Bilingual Rights Amendment of 1986, *N.J.S.A.* 43:21–11.1, to send repayment notices written in Spanish. The amendment states in relevant part:

> The Department of Labor shall take any actions as the commissioner deems necessary to improve the administration of the unemployment compensation program as it concerns agricultural workers. The actions shall include, but not be limited to, the following:
> b. making bilingual forms available for all Spanish-speaking agricultural workers applying for or receiving benefits. [*N.J.S.A.* 43:21–11.1.]

The Appellate Division affirmed the Board's decision in a *per curiam* opinion. Like the Department, the court concluded that the ten-day limitation on the right to appeal was jurisdictional. As a result, failure to reply in a timely manner as defined by the statute made the determination final without exception. The court also rejected Rivera's argument that the notices were inadequate under *N.J.S.A.* 43:21–11.1 because they were not written in Spanish.

Rivera filed a petition for certification before this Court. In it he argues that his due process notice and hearing rights were violated by the agency's refusal to hear his appeal. He empha-

sizes that he did not receive the notice until eighteen days after the Division had sent it and that he filed his appeal just two days later. He also notes that he was not receiving benefits from the Division at the time the notice was sent, that the Division makes no effort to determine whether it is sending notice to the correct address, and that the Division does not want former recipients of benefits to report address changes. We granted certification, 127 *N.J.* 555, 606 *A.*2d 368 (1991), and now hold that the notice periods and practices applied by the Department in this case were inadequate to protect Rivera's due-process rights.

## II

The Constitution demands that a person not be deprived of property or liberty absent due process of law. *Cunningham v. Department of Civil Serv.*, 69 *N.J.* 13, 19, 350 *A.*2d 58 (1975). To make such process adequate the state must provide "notice and an opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover B. & T. Co.*, 339 *U.S.* 306, 313, 70 *S.Ct.* 652, 656, 94 *L.Ed.* 865, 873 (1950). Put simply, the citizen facing a loss at the hands of the State must be given a real chance to present his or her side of the case before a government decision becomes final. The touchstone of adequate process is not abstract principle but the needs of the particular situation. *See Morissey v. Brewer*, 408 *U.S.* 471, 481, 92 *S.Ct.* 2593, 2600, 33 *L.Ed.*2d 484, 494 (1972) ("due process ... calls for such procedural protection as the particular situation demands"); *Township of Montville v. Block 69, Lot 10*, 74 *N.J.* 1, 13, 376 *A.*2d 909 (1977). "[A]ny proceeding which is to be accorded finality [requires] notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane, supra,* 339 *U.S.* at 314, 70 *S.Ct.* at 657, 94 *L.Ed.* at 873.

In the past courts distinguished between "rights" and "privileges" in determining whether recipients had protected property interests in certain government benefits. *See Sherbert v. Verner*, 374 *U.S.* 398, 404, 83 *S.Ct.* 1790, 1794, 10 *L.Ed.*2d 965, 971 (1963). Today, however, that a person has a property interest in a benefit when he or she has a "legitimate claim of entitlement to it" is well established. *Board of Regents v. Roth*, 408 *U.S.* 564, 577, 92 *S.Ct.* 2701, 2709, 33 *L.Ed.*2d 548, 561 (1972); *Williams v. Civil Serv. Comm'n.*, 66 *N.J.* 152, 156–57, 329 *A.*2d 556 (1974). As the Supreme Court recognized in *Goldberg v. Kelly*, 397 *U.S.* 254, 262, 90 *S.Ct.* 1011, 1017, 25 *L.Ed.* 287, 295–96 (1970), benefits such as welfare and unemployment compensation are matters of statutory entitlement. Like many other forms of property, such as licenses and memberships, government benefits may be intangible but are no less valuable or deserving of Fifth Amendment protection than more traditional forms of common-law property. *Id.* at note 8.

■ Therefore we break no new ground in recognizing that "state statutes providing for the payment of unemployment compensation benefits create in the claimants for those benefits property interests protected by due process." *Wilkinson v. Abrams*, 627 *F.*2d 650, 664 (3rd Cir.1980); *see also Ross v. Horn*, 598 *F.*2d 1312, 1317–18 (3rd Cir.1979), *cert. denied* 448 *U.S.* 906, 100 *S.Ct.* 3048, 65 *L.Ed.*2d 1136 (1980). Here plaintiff contributed to the unemployment insurance system from his own wages. Moreover, the Department is not simply seeking to cease future payments but to recoup past payments, which in all likelihood have already been spent by the recipient. The significant property interest in those benefits is unquestionable and thus protected by the Fifth Amendment. Indeed, federal statutory law recognizes that due-process interest by expressly requiring that unemployment claimants be provided an "opportunity for a fair hearing." 42 *U.S.C.* 503(a)(3).

Neither the Department nor the Appellate Division considered the import of Rivera's due process rights. Both concluded under a 1963 Appellate Division decision, *Lowden v. Board of Review*, 78 *N.J.Super.* 467, 189 *A.*2d 224 (1963), that the process due claimants was defined and limited by the State statute. In *Lowden* the court concluded that "[s]ince the right to unemployment compensation benefits is purely statutory, the procedural aspects of the enforcement of such right are governed entirely and exclusively by the statute." *Id.* at 469 (citations omitted). For many years the Department appears to have followed that rigid approach. The agency's manual for unemployment-benefits procedure lists the following precedents under "time":

It was held that the Board of Review has no discretion concerning the time limit on appeals.

An appeal which was not filed within the statutory time limit was held untimely regardless of the extent of its untimeliness. An appeal filed one day late was held untimely.

Receipt of a Deputy's determination and demand for repayment of benefits too late to file a timely appeal due to change of address did not constitute good cause for filing a late appeal, where the decision was mailed to claimant's last known address.

Illness or death in family was not considered good cause for filing a late appeal.

Failure of the postal authorities to forward mail to claimant's new address did not constitute good cause for filing late appeal, where the decision was mailed to claimant's last known address.

Failure to receive a determination did not constitute good cause for filing a late appeal, where the Deputy mailed the determination to claimant's last known address. [*Interpretation Service Manual Unemployment Benefits: Digest of Precedent Decisions—Procedure*, 430.2.]

Although a rule that limits process due a claimant with a legitimate entitlement to government benefits to that provided by a statute may have been appropriate in 1963, our understanding of property rights and the nature of due process has evolved significantly since that time. *See White v. Violent Crimes Compensation Bd.*, 76 *N.J.* 368, 376, 388 *A.*2d 206 (1978) (strict adherence to limitation periods without regard to their underlying purposes disserves the goals of justice). The United States Supreme Court has for more than two decades

recognized that although statutory in their origin, public benefits, such as unemployment insurance, give rise to protected property interests. *See, e.g., Goldberg v. Kelly, supra* 397 *U.S.* at 262, 90 *S.Ct.* at 1017–18, 25 *L.Ed* at 295–96. Rather than being jurisdictional, the notice statute, *N.J.S.A.* 43:21–16(d), serves to implement or execute the due process protections mandated by the United States and New Jersey constitutions. *Accord Roman v. Arizona Dep't of Economic Sec.,* 130 *Ariz.* 581, 637 *P.*2d 1084 (App.1981). Although the statute may provide adequate notice in many situations, when it does not, the rights of claimants are founded on due process.

We are convinced that accommodating the concerns of due process comports fully with the federal objectives underlying the cooperative unemployment-insurance system. Recognizing that a rigid approach to appeal periods subverts the remedial objectives of the unemployment-insurance program, the United States Department of Labor, by regulation, specifically allows states to grant good-cause exceptions to allow appeals that are filed late. 20 *C.F.R.* sec. 6013(c)(2)(i)(2)(b). At least twenty-eight states permit some form of good-cause exception to allow late appeals. United States Unemployment Insurance Service, *Comparison of State Unemployment Insurance Laws,* 5:19–20 (1991).

■ The statute under which the Department acted calculated the appeal period based on two possible dates: ten days after the notice was mailed by the Department *or* seven days after the notice was delivered to the recipient. *N.J.S.A.* 43:21–16(d). The Appellate Division interpreted the act of delivery to constitute the placement of the notice in the recipient's mailbox. We question that interpretation of the concept of delivery as it is used in the statute. When the purpose of the statute is understood as providing recipients with constitutionally adequate notice, then delivery more accurately occurs when the notice arrives at the address at which the recipient is actually living. See *Black's Law Dictionary,* 385 (5th Ed.1979) (defin-

ing "delivery" as the act by which an item is placed within the actual or constructive possession or control of another); *accord Eves v. Iowa Employment Sec. Comm'n,* 211 *N.W.*2d 324 (Iowa 1973). The Department argues that its hands are tied, that it has no authority to adopt another interpretation. However, the agency's statutory obligation must concur with its constitutional obligation. The Department is subject to the constitutional obligation to protect the due-process rights of claimants. *Cf. Hopkins v. Board of Review,* 249 *N.J.Super.* 84, 89, 591 *A.*2d 1371 (App.Div.1991) ("the Division cannot recover from this claimant payments to which the Board of Review has found her entitled").

█ Under certain circumstances delivery at a person's last known address might be adequate. It is not adequate when the person involved is by the nature of his or her work a migrant and when the agency involved makes no effort to keep track of address changes. We find nothing *per se* defective about the statutory time limitations on the right to appeal. Nonetheless we find that it was inadequate as interpreted and applied to the situation of migrant farmworkers such as Rivera. Through no fault of his own, Rivera received notice of his right to appeal after that right had expired. The end result (predictable, given the nature of his work) was that he was denied a right to appeal.

That the Department did not take into consideration the nature of migrant farm work in designing its notice system and in dealing with late appeals is evident in this case. As this Court recognized in *Comite Organizador v. Molinelli,* 114 *N.J.* 87, 552 *A.*2d 1003 (1989), "The 'seasonal nature of the employment, the residence of many workers in Puerto Rico ... language barriers, lack of legal advocacy, and isolated living and working conditions all combine to make it especially difficult for farm workers to recognize their constitutional rights.' " *Id.* at 107, 552 *A.*2d 1003 (quoting Goldberg & Williams, *Farmworkers' Organizational and Collective Bargaining Rights in*

*New Jersey: Implementing Self–Executing State Constitu-
tional Rights*, 18 Rutgers L.J. 729, 763 (1987)). Under *Mul-
lane*, notice must be reasonably calculated to reach the interest-
ed party. Using the last known address of a migrant farm
worker without requiring that recipients update their addresses
means as a practical matter that many notices will either never
arrive or arrive only after substantial delay. Mailing a notice
to a recipient's off-season address during the farm-work season
is almost assured to result in untimely notice. "[W]hen notice
is a person's due, process which is a mere gesture is not due
process." *Mullane v. Central Hanover B. & T. Co., supra,*
339 *U.S.* at 315, 70 *S.Ct.* at 657, 94 *L.Ed.* at 875.

Nor are English-only notices sent to migrant farm workers in
Puerto Rico reasonably calculated to provide those persons with
a adequate notice. *Cf. Alfonso v. Board of Review*, 89 *N.J.* 41,
45, 444 *A.*2d 1075, *cert. denied*, 459 *U.S.* 806, 103 *S.Ct.* 30, 74
*L.Ed.*2d 45 (1982) ("in an English-speaking country, require-
ments of 'reasonable notice' are satisfied when the notice is
given in English"). As we have stated above, the nature of the
notice required by the due-process clause depends on the actual
context in which notice is being given. Puerto Ricans carry out
most of their daily life and public business in the Spanish
language. *See Id.* 89 *N.J.* at 57, 444 *A.*2d 1075 (Wilentz, C.J.,
dissenting) ("Spanish is ... given special recognition as the
native language of many United States citizens."). Because
migrant farm work is among the lowest wage and status work
in the society, it is generally those who have limited education
in either Spanish or English whose fate it is to do this work.
Since 1986 the Legislature has recognized that the failure to
translate notices to persons who "apply for or receive unem-
ployment benefits" into Spanish puts those persons at a severe
disadvantage. *N.J.S.A.* 43:21–11.1(b) (Farmworkers Bilingual
Rights Amendment). The Farmworkers Bilingual Rights
Amendment provides that the Department of Labor shall make
bilingual forms available for all Spanish-speaking agricultural
workers applying for or receiving benefits. The statute does

not expressly mention former recipients. Nonetheless the statute provides that "the actions shall include, but not be limited to," making such forms available to workers applying for or receiving benefits. *N.J.S.A.* 43:21–11.1(b). Whether this legislation applies directly to a person who receiv*ed* benefits in the past, it clearly indicates a State policy that the due process afforded to residents of a U.S. Commonwealth where Spanish is the predominant language should include bilingual notification. *See Vasquez v. Glassboro Ass'n.*, 83 *N.J.* 86, 99, 415 *A.*2d 1156 (1980) ("The courts and Legislature of New Jersey have demonstrated a progressive attitude in providing legal protection for migrant farm workers.").

## III

Determining the exact nature of the process that should be provided to a claimant in Rivera's position requires balancing the interests at stake. *See, e.g., Mathews v. Eldridge*, 424 *U.S.* 319, 335, 96 *S.Ct.* 893, 903, 47 *L.Ed.*2d 18, 33 (1976) (setting forth a three-part balancing test weighing individual and governmental interests and the costs of different types of procedure). Under that balancing approach the costs associated with providing any given type of notice are weighed against the benefits that would accrue as a result. *Id.* 424 *U.S.* at 346–49, 96 *S.Ct.* at 908–10, 47 *L.Ed.*2d at 40–42. In this case the interests in avoiding a wrongful order to repay are substantial. Although, unlike welfare, unemployment insurance is not based directly on financial need, such payments are almost invariably relied on to meet basic needs. *See Ross v. Horn, supra,* 598 *F.*2d at 1318–19 (" 'the potential deprivation here is generally likely to be less that in *Goldberg* (welfare), although the degree of difference can be overstated' ") (quoting *Mathews v. Eldridge,* 424 *U.S.* at 341, 96 *S.Ct.* at 906, 47 *L.Ed.*2d at 37). Given the nature of migrant temporary labor, there is little doubt that Rivera has spent these funds and repaying them would constitute a serious hardship. On the other hand, little explains the inflexible application of the ten-day time limit on

appeals. The Department has four years within which to recoup payments that were wrongly made. Moreover, the general need to expedite eligibility decisions does not apply to recoupment. The cost of the hearing on the merits that the Department denied to Rivera is reimbursed by the federal government. 26 *U.S.C.* § 3301–09. And as the procedural history of this case illustrates, claimants who file late appeals receive hearings but are then not allowed to raise substantive issues. No fewer administrative resources would have been expended had the Department allowed Rivera an appeal on the merits.

The system for sending notice and treating untimely appeals is a matter left to the discretion of the Department. Because due process must conform to the actual nature of the particular labor market—in this case the experience of migrant farm workers who live in Puerto Rico and New Jersey during different parts of the year—the Department is in the best position to promulgate the necessary regulations. *See Dougherty v. Department of Human Servs.*, 91 *N.J.* 1, 6–7, 449 *A.*2d 1235 (1982); *Texter v. Department of Human Servs.*, 88 *N.J.* 376, 389 (1982). "The reasonableness and hence constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected." *Mullane v. Central Hanover B. & T. Co.*, 339 *U.S.* at 315, 70 *S.Ct.* at 657, 94 *L.Ed.* at 875. The allowance for good cause exceptions, a more diligent effort to keep track of former recipients, and an interpretation of the term delivery to mean delivery at the address at which the former recipient is living would all go a long way toward protecting due-process rights. No system of notice is perfect or able to account for all possible contingencies. However, the system used by the Department must assure that those who have a right to appeal are afforded the time to exercise that right.

We reverse the Appellate Division decision. We order the Department to consider the merits of Rivera's appeal and promptly promulgate regulations that assure that migrant farm

workers are provided with adequate notice of agency determinations.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For affirmance*—None.