**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2152-18T2

IN THE MATTER OF E.P.

_____

Submitted November 7, 2019 – Decided November 19, 2019

Before Judges Haas and Mayer.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

Hinkle, Fingles, Prior & Fischer, PC, attorneys for appellant E.P. (Melissa D. Powers, and Adam P. Wilson, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent Division of Medical Assistance and Health Services (Melissa H. Raksa, Assistant Attorney General, of counsel; Nicholas Logothetis, Deputy Attorney General, on the brief).

PER CURIAM

It is well established that State agencies must "turn square corners" with members of the regulated public. W.V. Pangborne & Co. v. N.J. Dep't of Transp., 116 N.J. 543, 561-62 (1989). This rule is particularly apt when the

agency, as here, is dealing with our most vulnerable citizens. Because the State Department of Human Services (Department) failed to abide by this important maxim in this case, we are constrained to reverse and remand so that appellant E.P. can receive the administrative hearing she had been requesting for well over a year.

The facts of this matter are not in dispute and are fully documented in the letters and emails E.P.'s mother and guardian, Eve,[1] and later their attorney, sent to the Department between April 19, 2017 and October 15, 2018 attempting to secure the hearing. E.P. was a client of the Department's Division of Developmental Services (DDS). This agency "provides a single point of entry for people seeking disability related information in New Jersey[,]" and "works to streamline access to services and information that promote and enhance independent living for individuals with disabilities by facilitating coordination and cooperation among local, county, and State government agencies." N.J.A.C. 10:139-1.1. Among other things, DDS is responsible for "[o]perating a comprehensive information and referral system for persons of all ages with disabilities;" "[c]oordinating State government agencies offering services to

---

[1] Because E.P. and her mother have the same initials, we refer to E.P.'s mother by a fictitious name. In doing so, we intend no disrespect.

individuals with disabilities;" and "[a]cting as the Statewide hub on disability related issues and information[.]"  N.J.A.C. 10:139-1.2(c)(1), (c)(2), and (c)(4).

E.P. is a thirty-four-year-old woman who is developmentally disabled as a result of Down Syndrome.  She lives with her parents, Eve and V.P., who are her legal guardians.  In addition to being a client of DDS, E.P. is eligible for services from the Department's Division of Medical Assistance and Health Services (DMAHS), including Personal Care Assistance (PCA), the specific services involved in this case.  Clients receiving PCA are able to schedule services to meet their needs in their homes, and hire the individuals they choose, who can be family, friends, or even neighbors, to provide these services.  These services can include assisting the client with grooming, bathing, eating, and ambulation, and with performing household duties essential to the client's health and comfort, such as cleaning and laundry.  N.J.A.C. 10:60-3.3(a) and (b).

To qualify for payment from DMAHS for PCA services, the client's need for services is periodically certified in writing by a qualified healthcare professional as medically necessary.  N.J.A.C. 10:60-3.4(a).  As of the beginning of March 2017, E.P. had been certified as eligible for twenty-two hours of in-home PCA services per week.  As DMAHS states in its appellate brief, the PCA

program "was operated by DDS" in March 2017 when this case arose, and was not taken over by DMAHS until April 2018.

On March 1, 2017, a registered nurse from E.P.'s managed care organization, United Healthcare (United), conducted a regularly-scheduled reassessment of her needs for continued PCA services. Based upon this assessment, United mailed a written notice to E.P., that was dated March 23, 2017. This notice advised that United had determined that E.P. was only entitled to eight hours of PCA services per week instead of the twenty-two hours she had previously received. The notice stated that if E.P. wished to "pursue an informal, internal review" of this decision with United, she could do so by telephoning or writing United. In the alternative, E.P. could request a "Medicaid Fair Hearing" that would be conducted by the Office of Administrative Law (OAL), by submitting a written request to DMAHS at an address set forth in the notice. The notice included a form hearing request that could be used by E.P.

The notice stated that E.P. had "20 calendar days from the date [she] receive[d] this notice . . . to send in [her] request for a Medicaid Fair Hearing and to request continuation of services" pending the completion of that hearing. The sample hearing request form included in the notice stated that for purposes of calculating the time to appeal, "[t]he date on which this notice is received by

4

[the client] is considered to be five days after the date listed at the top of this notice of action, unless [the client] can show that [he or she] did not receive this notice of action within this five-day period." Accordingly, E.P.'s time for appeal did not begin to run until March 28, 2017, which was five days after the notice was dated. Thus, Eve should have sent E.P.'s hearing request by April 17, 2017.

Eve attempted to file a timely written appeal notice on E.P.'s behalf but, unfortunately, she made a mistake. Eve called DDS, the agency she had worked with in the past, and the agency responsible for administering the PCA program. She spoke to an employee there, who advised her that her telephone call to DDS was sufficient to request the hearing, but she should still follow up in writing. It took a couple of more days for Eve to obtain a mailing address for this DDS employee, and Eve mailed her written hearing request to the employee on April 19, 2017. Thus, Eve's appeal was filed no more than two days late.

This should not have posed a problem for E.P. N.J.A.C. 10:49-10.3(b)(3) states that "[c]laimants shall have [twenty] days from the date of notice of Medicaid Agent or NJ FamilyCare-Plan A program action in which to request a hearing[.]" Although this regulation does not contain a provision permitting an extension of the twenty-day deadline for good cause, due process principles

require that the Department provide that opportunity. See Rivera v. Bd. of Review, 127 N.J. 578, 590 (1992).[2]

Here, Eve contacted DDS, the Division of the Department tasked with administering the PCA program within the 20-day time period for requesting a hearing. As the agency responsible for "[o]perating a comprehensive . . . referral system" for DDS clients, "[c]oordinating" the work of the "State government agencies offering services to individuals with disabilities[,]" and "[a]cting as the Statewide hub on disability related issues and information[,]" DDS surely had a responsibility, if Eve had incorrectly contacted that agency or mailed her hearing request to it, to make sure the notice was sent to the proper agency within the Department for processing. N.J.A.C. 10:139-1.2(c)(1), (c)(2), and (c)(4). Instead, DDS assured Eve that E.P.'s hearing request would be processed.

Over the months that followed, Eve followed up with DDS, and was informed that E.P.'s appeal was "under review." DDS later told Eve that it "had

---

[2] Indeed, the Department has promulgated a regulation that allows an applicant for Aid to Families with Dependent Children (AFDC-Medicaid) to obtain an extension of the twenty-day period for an appeal from adverse agency decisions concerning these benefits if the applicant can show "extraordinary and extenuating circumstances exist as determined by" DMAHS. N.J.A.C. 10:69-6.8(b).

A-2152-18T2

no record" of the matter. Eve then called "PPL,"[3] which she described as a "new company" that had become involved in the matter. That company continually told her to "give it some time and call back." She called every two weeks, and "was given the same answer[.]"[4]

Unable to get a response from the Department concerning her request for a hearing, Eve contacted a State legislator for assistance, and her emails with the legislator's office between September 2017 and January 2018 are included in the record on appeal. The legislative staff contacted DDS and was advised that E.P.'s appeal had been sent to the OAL and, therefore, DDS could "no longer weigh in on the case." Over the months that followed, however, it became clear that was not the case, and Eve continued to press for information.

In December 2017, a DDS official told Eve she would be contacted about her hearing shortly. That did not occur. In January 2018, the legislator's staff contacted a DMAHS employee, who called Eve. This employee eventually sent an email to Eve stating, "[w]e have been working on the steps needed to get the

---

[3]  This was an apparent reference to an organization known as "Public Partnerships," which contracted with the Department to provide fiscal intermediary services for the PCA program.

[4]  In September 2017, United conducted another scheduled reassessment of E.P.'s needs, and determined that she was now entitled to nine, rather than eight, hours of PCA services per week.

situation resolved. May need to have another conversation by phone regarding your desire to appeal the number of hours." Eve replied to the email, and again asked for a hearing for E.P.

Eve did not receive a response to this correspondence until almost three months later. The DMAHS employee's April 4, 2018 letter advised Eve that the agency "ha[d] been unable to locate any formal request for an appeal" of United's finding that E.P. could not longer receive twenty-two hours of PCA services per week. The employee asked Eve to send copies of any "documentation of an appeal request" if it was available. Of course, by that time, this employee had already received emails from Eve requesting the hearing.

At that point, Eve and V.P. retained an attorney to represent E.P. The attorney sent a letter to DDS on June 19, 2018, complaining about the hearing process, and the Department's failure to refer Eve's long-standing request to the OAL. When DDS failed to respond, the attorney sent a second letter on July 30, 2018.

On August 21, 2018, the DMAHS employee who had earlier corresponded with Eve about her hearing request, responded to E.P.'s attorney by letter. The employee simply referred to her April 2018 correspondence to Eve, and advised that E.P. needed to re-enroll in the program and schedule a reassessment of her

needs. In reply, the attorney sent a letter to DMAHS on October 15, 2018, containing another request for a hearing concerning the March 2017 determination.

In DMAHS's final decision of November 19, 2018, it ruled that the attorney's October 15 letter was the first letter requesting a hearing it had received. Despite the documentation Eve provided that is part of the record on appeal, in which she asked representatives of both DDS and DMAHS for a hearing on behalf of her daughter, DMAHS stated "there is no evidence that [E.P.] or her guardians appealed" either the March 2017 or September 2017 reductions in her PCA hours. Therefore, DMAHS deemed E.P.'s attorney's October 15 hearing request to be "woefully beyond the 20[-]day time limit" for appeal, and denied E.P.'s request. This appeal followed.

Our review of an agency decision is limited. In re Stallworth, 208 N.J. 182, 194 (2011). "In order to reverse an agency's judgment, [we] must find the agency's decision to be 'arbitrary, capricious, or unreasonable, or [ ] not supported by substantial credible evidence in the record as a whole.'" Ibid. (second alteration in original) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 580 (1980)). In determining whether an agency's action is arbitrary, capricious, or unreasonable, our role is restricted to three inquiries:

(1) whether the agency action violates the enabling act's express or implied legislative policies; (2) whether there is substantial evidence in the record to support the findings upon which the agency based application of the legislative policies; and (3) whether, in applying the legislative policies to the facts, the agency clearly erred by reaching a conclusion that could not reasonably have been made upon a showing of the relevant factors.

[W.T. v. Div. of Med. Assistance & Health Servs., 391 N.J. Super. 25, 35-36 (App. Div. 2007) (quoting Pub. Serv. Elec. & Gas Co. v. N.J. Dep't of Envtl. Prot., 101 N.J. 95, 103 (1985)).]

Furthermore, "[i]t is settled that '[a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to our deference.'" E.S v. Div. of Med. Assistance & Health Servs., 412 N.J. Super. 340, 355 (App. Div. 2010) (second alteration in original) (quoting Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001)). "Nevertheless, 'we are not bound by the agency's legal opinions.'" A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 340 (App. Div. 2009) (quoting Levine v. State Dep't of Transp., 338 N.J. Super. 28, 32 (App. Div. 2001)).

Applying these principles, it is clear that DMAHS's decision to deny E.P.'s hearing request cannot stand. The evidence clearly shows that Eve filed a written request for a hearing that was no more than two days beyond the twenty-

day time limit for appeal. Although Eve sent that request to DDS, rather than DMAHS, neither agency has demonstrated that it sustained any prejudice whatsoever due to this mistake.

Over the months that followed, Eve contacted representatives of DDS, the agency charged with coordinating services for the developmentally disabled citizens of our State. That agency could have, but inexplicably did not, simply re-direct her hearing request to DMAHS. Instead, DDS continued to tell Eve and her legislative representative that the matter was being processed.

Similarly, DMAHS was eventually included in the email chain, which made it abundantly clear that Eve wanted a hearing to contest the reduction of services for E.P. Yet, DMAHS later took the unsupported position that it had no knowledge of any request by Eve for a hearing until the family's attorney sent another written request on October 15, 2018.

As set forth in our extended recitation of the idiosyncratic, yet uncontradicted, facts of this case, E.P. and her family went through months of unnecessary travails seeking to obtain a routine hearing. Under these circumstances, DMAHS's final decision to ignore Eve's repeated requests for a hearing and then conclude that her appeal was somehow "525 days out of time," is plainly arbitrary, capricious, and unreasonable.

Therefore, we reverse the agency's November 19, 2018 final decision, and remand the matter to DMAHS for an OAL hearing on the merits of E.P.'s appeal.[5]  The hearing should be completed, and DMAHS shall issue a new decision, within sixty days of the date of this opinion.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5]  In her appellate brief, E.P. asks that we order DMAHS to reimburse her for the PCA services she paid for after March 2017 and for her counsel fees and costs.  However, these requests should be pursued at the OAL hearing in the first instance.

A-2152-18T2