# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2365-20

LEANDER WILLIAMS,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted May 4, 2021 – Decided May 11, 2021

Before Judges Ostrer and Enright.

On appeal from the New Jersey Department of Corrections.

Joseph E. Krakora, Public Defender, attorney for appellant (John P. Flynn, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Suzanne Davies, Deputy Attorney General, on the brief).

PER CURIAM

Inmate Leander Williams appeals from the Department of Corrections' final agency decision refusing to consider supplemental information supporting his request for release on emergency medical home confinement (EMHC) under Executive Order 124, as supplemented by In re Request to Modify Prison Sentences, 242 N.J. 357, 369 (2020). We reverse and remand.

Williams was sentenced to an aggregate eight-year term of incarceration, with a four-year period of parole ineligibility, for various non-violent drug-related crimes. He is forty-nine years old and has an extensive prior criminal record, including prior terms of incarceration and periods of community release. He reportedly suffers from various medical ailments, including diabetes, asthma, hypertension and congestive heart failure.

Deemed eligible for EMHC under the Executive Order, Williams applied for release early in 2020. However, the Emergency Medical Review Committee recommended against Williams's release, and the Commissioner agreed in a May 5, 2020 decision.

One month later, the Supreme Court issued its decision in Request to Modify. Among other things, the Court required the Commissioner to give inmates a statement of reasons for EMHC denials, which could be brief, and to allow inmates to correct any perceived mistakes and provide additional

2

information to satisfy the Commissioner's concerns.  <u>Request to Modify</u>, 242 N.J. at 389.

Less than two weeks after the Court ruled, the Commissioner denied Williams's application again, this time stating his reasons in a checklist.  The Commissioner's June 17, 2020 decision cited:

> 2.) Offense record is extensive and/or repetitive
>
> . . . .
>
> 4.) Committed to incarceration for multiple offenses
>
> . . . .
>
> 6.) Prior opportunity on community supervision did not deter criminal behavior
>
> 7.) Prior incarceration(s) did not deter criminal behavior
>
> . . . .
>
> 10.) Lack of adequate furlough plan
> 11.) Poor risk assessment evaluation
>
> . . . .
>
> 14.) Other agency objection, specify Prosecutor Christopher Kuberiet.

Williams evidently did not try to correct any errors, nor did he provide any additional information in the four days the Commissioner allotted for that purpose.[1]

Nine months passed.  Then, in March 2021, counsel for Williams wrote to the Commissioner asking him to "accept this statement in support of Mr.

---

[1] The Department contends on appeal that the time period for reconsideration requests actually is five days.

Williams's consideration for EMHC." Counsel acknowledged that Williams "may have been previously considered for EMHC" before counsel began representing him. Counsel asserted that circumstances had changed since the prior consideration. Specifically, counsel noted that Williams's wife had moved to a new address where Williams intended to live. Counsel argued the residential arrangement "provided a suitable furlough plan." Counsel also noted that Williams had been approved for transfer to a halfway house and would be eligible for parole in October 2021. Counsel argued those developments demonstrated he posed a reduced risk to community safety. Counsel also asserted that Williams's various health conditions justified medical home confinement, although counsel did not assert that Williams's condition had changed significantly since he initially applied for EMHC.

The Department's Director of Classification deemed counsel's letter to be a request to reconsider the Commissioner's June 17, 2020 decision. The Director noted that reconsideration requests had to be made within five business days of an initial denial. Because counsel sent his letter almost nine months after the initial denial, it was "untimely and cannot be considered."

On appeal, Williams argues that the Commissioner's refusal to consider his renewed request for EMHC was arbitrary and violated due process. He

4

asserts the Department has the "inherent power to reopen or to modify and rehear prior decisions," quoting In re Application of Trantino, 89 N.J. 347, 364 (1982), and citing Duvin v. State, 76 N.J. 203, (1978) and In re Van Orden, 383 N.J. Super. 410, 421 (App. Div. 2006). In response, the Department contends its need to swiftly decide EMHC requests justified the short deadline for reconsideration requests, and the Department did not arbitrarily refuse to consider Williams's latest request, especially since he did not present good cause for his delay.

The Commissioner exercises wide discretion in deciding if he will grant an EMHC application. Request to Modify, 242 N.J. at 390. We will not overturn that decision "unless it is arbitrary, capricious, or unreasonable." Ibid. We ask, does the decision "conform[] with relevant law"; does "substantial credible evidence in the record as a whole . . . support the agency's decision"; and "in applying the relevant law to the facts, [did] the agency clearly err[]"? Ibid. (quoting In re State & Sch. Emps.' Health Benefits Comm'ns' Implementation of Yucht, 233 N.J. 267, 280 (2018)).

We conclude that the Department's refusal to consider Williams's new information because it was not presented within five days of its June 17, 2020 decision was unreasonable. Although Williams does not state precisely when

his wife was prepared to share her home with him and when he was approved for a halfway house, those events obviously occurred after, if not long after, the brief window provided in the Commissioner's June 17, 2020 decision.

The Court in Request to Modify held that due process principles required that the Commissioner permit inmates to attempt to correct mistakes and address concerns leading to initial denials of furlough.

> [I]nmates should have an opportunity to respond in writing to the statement of reasons [denying the furlough]. In that way, they may be able to cure a mistake or satisfy a concern of the Commissioner. For example, if the original sponsor is deemed unsatisfactory, the inmate can propose another; if the proposed housing is deemed unacceptable because of a factual mistake, the inmate can clarify the error. The Commissioner must consider the response before finalizing the agency's decision. Afterward, the inmate and counsel must receive prompt notice in writing.

> [Id. at 389.]

Implicitly, an inmate must contemporaneously possess the wherewithal to "cure a mistake," or to "satisfy a concern" to utilize the opportunity to respond to the statement of reasons. The Court simply did not address what should happen if an inmate's circumstances changed significantly after the Commissioner's denial.

6

A-2365-20

The Commissioner could deem a submission like Williams's as a request to reconsider a prior denial, or as a new application. We leave that procedural decision to the Commissioner. But, either way, well-established principles compelled the Commissioner to consider Williams's new information.

An administrative agency has the inherent power to reconsider its decisions. See Trantino, 89 N.J. at 364. An agency cannot "arbitrarily refuse to reopen the record" in an adjudicative proceeding. Steven L. Lefelt et al., 37 N.J. Prac., Administrative Law and Practice § 6.32 (2d ed. 2020). It may be an abuse of discretion to refuse to do so when presented with "new evidence or changed circumstances." See Fry v. D.E.A., 353 F.3d 1041, 1044 (9th Cir. 2003). We recognize the general interest in repose, but no one has detrimentally relied on the prior denial; and the balance here tips in favor of considering Williams's new information. See Skulski v. Nolan, 68 N.J. 179, 199 n.10 (1975) (discussing factors affecting an agency's decision to reopen a prior determination).

The agency's five-day deadline cannot be immutable. In Rivera v. Bd. of Review, 127 N.J. 578, 585-86 (1992), the Supreme Court held that modern notions of due process temper rigid application of time limitations that impact a person's property interests. There, due process required a good cause

exception to allow late appeals from unemployment compensation decisions. Ibid. Likewise, in this case, if the Commissioner chooses to deem Williams's March 2021 letter a reconsideration request (as opposed to a new request based on new facts), he is required to relax the deadline for good cause, specifically, because Williams presented information that simply was not available in the allotted time.

The Commissioner's refusal to consider Williams's request is unreasonable for another reason. The Commissioner contends on appeal that it imposed the short five-day time frame to respond to the Court's statement in Request to Modify urging the Commissioner to swiftly consider EMHC applications because "time [wa]s of the essence." 242 N.J. at 392-93. However, the Court urged swift action only to vindicate, not defeat, an inmate's interest in a medically based furlough during a pandemic.

Alternatively, if the Commissioner does not deem Williams's March 2021 letter as a reconsideration request, then the Commissioner should permit Williams to submit a new application based on his counsel's letter. If a new application form is required — we note that Williams completed one in April 2020 — the Department should give Williams a chance to submit one. The Department may decide to seek an updated recommendation from the

8

Emergency Medical Review Committee. It would be arbitrary and unreasonable to deny an inmate an opportunity to present information regarding a material change in circumstances. In another context, we have held that a change in circumstances is "material" if it is reasonably possible that it would warrant a different outcome. See State v. Paul, 465 N.J. Super. 290, 298 (App. Div. 2020) (defining material change in circumstance justifying different conditions of release under the Criminal Justice Reform Act). Similarly, if an inmate presents facts regarding new developments that make it reasonably possible that an EMHC furlough might be granted — and Williams has done so by asserting his furlough plan and risk to the community has significantly changed — then the Department should permit the inmate to start the application process anew.

We express no opinion on the merits of Williams's renewed application for an EMHC furlough. However, the Commission is obliged to consider his submission, either as a request for reconsideration, or as a new application.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2365-20