**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0402-24

ILVIN F. TORIBIO,

     Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR AND
WORKFORCE DEVELOPMENT
and INNOVATIONS IN WALL
COVERINGS, INC.,

     Respondents.

_____

Submitted January 7, 2026 – Decided April 15, 2026

Before Judges Mayer and Jacobs.

On appeal from the Board of Review, Division of Unemployment Insurance, Department of Labor and Workforce Development, Docket No. 308301.

Northeast New Jersey Legal Services, attorneys for appellant (Stanley G. Sheats, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent Board of Review (Janet Greenberg Cohen,

Assistant Attorney General, of counsel; Gordon C. Estes, Deputy Attorney General, on the brief).

PER CURIAM

Ilvin F. Toribio appeals the August 27, 2024 final agency decision of the Department of Labor Board of Review (Board), affirming denial of his request for unemployment benefits and compelling payment of a refund for improperly paid unemployment and federal Pandemic Unemployment Assistance (PUA) benefits as redetermined by an Appeal Tribunal (Tribunal) of the Division of Unemployment and Temporary Disability Insurance (Division). We affirm.

I.

Toribio worked as a warehouse associate at Innovations in Wall Coverings, Inc. (Innovations) and performed general warehouse duties, including accounting, counting merchandise, packaging, and cleaning. In early April 2020, Innovations temporarily closed because of the COVID-19 pandemic. Toribio applied for unemployment benefits on April 5, 2020.[1]

Some weeks later, Innovations reopened and Toribio returned to work for several more unspecified months before permanently leaving the job on February 10, 2021. Rather than opening a new unemployment claim in February

---

[1] Pursuant to Executive Order No. 104, the Governor declared "both a Public Health Emergency and State of Emergency" on March 17, 2020.

A-0402-24

2021, petitioner "reasserted" his initial April 2020 claim, which the Division's computer system automatically reopened. Toribio initially received $1,017 for a two-week period, March 20 through April 3, 2021. He received $13,689 in benefits for his second or "transitional" claim for the weeks ending April 17, 2021 through January 8, 2022.[2]

On September 6, 2022, the Division issued a "redetermination," concluding Toribio was disqualified from receiving benefits because he left his job voluntarily without good cause attributable to the work, and was ineligible for PUA benefits because his unemployment did not arise for a qualifying reason under the Coronavirus Aid, Relief, and Economic Security (CARES) Act. The Division demanded payment of refunds for both sets of benefits, totaling $14,706. Toribio appealed.

---

[2] A claimant "can only have one valid unemployment claim at a time." Division of Unemployment Insurance, Glossary, https://www.nj.gov/labor/myunemployment/ help/glossary (last visited Apr. 2, 2026) (hereinafter "Glossary"). On the date a claimant files a new claim, a new 364-day "benefit year" begins. Ibid. See also N.J.S.A. 43:21-19 (defining "benefit year"). At the end of each benefit year, the claimant's current claim expires, and they must file a new "transitional" claim to continue receiving benefits. See Glossary. If a claimant stops receiving benefits for a claim, that claim is then "closed." Ibid. To resume receiving benefits in the same benefit year, the claimant must reassert the closed claim. Ibid. When the claimant does so, the Division's computer system automatically reopens that claim and resumes paying benefits. Ibid.

Following a July 19, 2023 hearing, at which Toribio was the sole witness, the Tribunal affirmed the Division's redeterminations. The Tribunal found Toribio's health fears were personal, unsupported by medical advice, or evidence of unusual danger in the workplace. It noted, "[b]ecause [Toribio] had requalifying work after the original claim date, he was able to qualify for a valid 'transitional' claim dated [April 11, 2021] from which he continued to receive benefits." The Tribunal concluded, however, that Toribio's voluntary separation from work did not qualify him for unemployment or PUA benefits under the CARES Act. Toribio appealed to the Board, which summarily affirmed both decisions on August 27, 2024. Toribio appealed.

On appeal, Toribio argues the agency deprived him of procedural due process by redetermining his benefit eligibility after long delay, without identifying the legal basis for reopening his case. He concedes "he was ineligible for regular unemployment benefits" and "may not have been eligible for [PUA] benefits." However, he argues "[e]ven if the court agrees with the agency that [his] unemployment was not a 'direct result' of the pandemic, the agency must be estopped from recouping any of his benefits." In support of equitable considerations, he contends "[i]t is difficult, if not impossible, for most people to find unemployment regulations online. . . . Claimants are thus at an enormous disadvantage in challenging this violation of their rights." He asserts

A-0402-24

the agency does not state how its redetermination met the governing standards. See N.J.A.C. 12:17-3.3(b).

In the alternative, Toribio argues labelling the overpayment as an "agency error" pursuant to N.J.A.C. 12:17-14.3 would be appropriate. Doing so would not reduce the amount of the debt, but it would limit the agency's recoupment to 50% of any subsequently-claimed benefits until the full debt is repaid.

The Board contends the redetermination complied with N.J.A.C. 12:17-3.3(b). It maintains Toribio's separation was voluntary, based on personal reasons not attributable to work, and that his circumstances did not satisfy the eligibility criteria for PUA under federal law. The Board argues repayment is required by statute, and equitable estoppel is unwarranted because the Division even-handedly applied the law. See N.J.S.A. 43:21-16.

II.

Our "review of an administrative agency's decision is limited." McClain v. Bd. of Rev., Dep't of Lab., 451 N.J. Super. 461, 466 (App. Div. 2017), aff'd, 237 N.J. 445 (2019) (citing In re Stallworth, 208 N.J. 182, 194 (2011)). We inquire only whether the agency action violated legislative policies, lacked support in the record, or was arbitrary, capricious, or unreasonable. Zimmerman v. Sussex Cnty. Educ. Servs. Comm'n, 237 N.J. 465, 475 (2019); Brady v. Bd.

of Rev., 152 N.J. 197, 210 (1997); see N.J.A.C. 12:17-3.3. More pointedly, our review is limited to determining:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Lavezzi v. State, 219 N.J. 163, 171 (2014) (quoting Stallworth, 208 N.J. at 194).]

"[A] court owes substantial deference to the agency's expertise and superior knowledge of a particular field." In re Herrmann, 192 N.J. 19, 28 (2007). Thus, "[g]enerally, 'we afford [an] agency great deference' in reviewing its 'interpretation of statutes within its scope of authority' in recognition of the agency's 'specialized expertise.'" McClain, 451 N.J. Super. at 466-67 (quoting N.J. Soc'y for Prevention of Cruelty to Animals v. N.J. Dep't of Agric., 196 N.J. 366, 385 (2008)). The challenging party bears the burden of showing agency action was arbitrary, capricious, or unreasonable. Lavezzi, 219 N.J. at 171.

New Jersey's Unemployment Compensation Law (UCL) disqualifies a claimant who leaves work "voluntarily without good cause attributable to such work." N.J.S.A. 43:21-5(a); Brady, 152 N.J. at 213. "'[G]ood cause attributable

6

A-0402-24

to such work' means a reason related directly to the individual's employment, which was so compelling as to give the individual no choice but to leave the employment." N.J.A.C. 12:17-9.1(b). "The decision to leave employment must be compelled by real, substantial and reasonable circumstances not imaginary, trifling and whimsical ones." Domenico v. Bd. of Rev., 192 N.J. Super. 284, 288 (App. Div. 1983). "[I]t is the employee's responsibility to do what is necessary and reasonable in order to remain employed." Ibid. (citing Condo v. Bd. of Rev., 158 N.J. Super. 172, 175 (App. Div. 1978)). "Consistent with a broad reading of the UCL as remedial legislation . . . 'when an employee becomes ill and does those things reasonably calculated to protect the employment[, then] notwithstanding that she is not reinstated, there is no voluntary leaving of work.'" Haley v. Bd. of Rev., Dep't of Lab., 245 N.J. 511, 522 (2021) (quoting De Lorenzo v. Bd. of Review, Div. of Emp't Sec., 54 N.J. 361, 364 (1969)). However, in such a situation, the claimant must provide medical proofs supporting a claim of "good cause attributable to the work." Wojcik v. Bd. of Rev., 58 N.J. 341, 344 (1971).

Here, after a full hearing, the Tribunal found Toribio left work due to unsubstantiated "personal fear of catching COVID-19," not because of a work-related compulsion, danger, or medical direction. Toribio did not demonstrate his employer's workplace presented an unreasonable COVID-19 risk or that

7

mitigative steps were available but not implemented. The Tribunal's findings are supported by substantial evidence in the record and align with governing law.

Toribio asserts the Division lacked grounds for reopening a final determination without stating its reasons, violating N.J.A.C. 12:17-3.3(b), which provides:

> (b) The Division may reconsider [or redetermine] a final determination for the following reasons:
>
> 1. Fraud, misrepresentation or misconduct of a party;
>
> 2. Newly discovered evidence not ascertainable at the time of the initial benefit determination by the exercise of reasonable diligence and the making of proper inquiry which would probably alter the determination;
>
> 3. Obvious material mistake or error which requires correction;
>
> 4. To vacate a determination which is entered without legal right and is void; or
>
> 5. The correction of inadvertent, premature, or clearly erroneous action.
>
> [N.J.A.C. 12:17-3.3(b).]

On review, the record demonstrates Toribio was ineligible for benefits from the outset because he left work voluntarily without good cause.

Additionally, he was ineligible for unemployment and PUA benefits. His receipt of benefits was thus a clear error, entered without legal right, and subject to correction under the regulation. The administrative record, including the Tribunal's written decisions, provides adequate notice of the legal basis for the redetermination. Due process requires meaningful notice and an opportunity to be heard, which were satisfied. See Rivera v. Bd. of Rev., 127 N.J. 578, 583, 584 (1992).

N.J.S.A. 43:21-16(d) requires refund of benefits received by claimants not entitled to them. The law applies regardless of good faith or reliance by the claimant. Bannan v. Bd. of Rev., 299 N.J. Super. 671, 674 (App. Div. 1997) (citing Fischer v. Bd. of Rev., 123 N.J. Super. 263, 266 (App. Div. 1973)). Federal law also requires recoupment of overpayments. Equitable estoppel rarely applies to bar recoupment by the government. To invoke the doctrine requires proof of a "manifest injustice" and detrimental reliance. See Sullivan v. Bd. of Rev., Dep't of Lab., 471 N.J. Super. 147, 157 (App. Div. 2022); Vogt v. Borough of Belmar, 14 N.J. 195, 205 (1954).

Because this equitable argument was not presented to the Division and neither the Tribunal nor the Board made pertinent factual findings, we would ordinarily decline to consider it. However, because both parties substantively addressed the arguments in their briefs and to preclude further litigation, we

9

briefly consider it.  See Price v. Himeji, LLC, 214 N.J. 263, 294 (2013) (quoting State v. Santos, 210 N.J. 129, 142 (2012)).

On review of the record and exercising original jurisdiction, we discern no manifest injustice warranting estoppel.  Here, after a full hearing, the Tribunal found Toribio left work due to unsubstantiated fears of COVID-19, not because of a work-related compulsion, incentive, or under medical advice.  We are satisfied the Tribunal's findings are supported by substantial evidence in the record and align with governing law.

Lastly, to qualify for PUA eligibility under the CARES Act, claimants must show unemployment "as a direct result of COVID-19."  15 U.S.C. § 9021(a)(3)(A).  The Tribunal found no qualifying circumstance under federal guidelines.  Toribio's fear of possible infection did not amount to an involuntary work cessation compelled by COVID-19.  The record supports this conclusion.

In sum, the Board's affirmance of the Division's redetermination was not arbitrary, capricious, or unreasonable.  Its findings and demand for recoupment are supported by substantial evidence in the record, applicable statutes, and regulations.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division