**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0036-18T1

KEONA WRIGHT,

      Appellant,

v.

BOARD OF REVIEW,
NEW JERSEY DEPARTMENT
OF LABOR, and CARRIER
CLINIC,

      Respondents.

_____

Argued December 9, 2019 – Decided February 12, 2020

Before Judges Sumners and Natali.

On appeal from the Board of Review, Department of Labor, Docket No. 113,887.

Kevin J. Mahoney argued the cause for appellant (Keona Wright, on the pro se briefs).

Jana Rene DiCosmo, Deputy Attorney General, argued the cause for respondent Board of Review (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Jana Rene DiCosmo, on the brief).

Respondent Carrier Clinic has not filed a brief.

PER CURIAM

Appellant Keona Wright challenges the final decision of the Board of Review of the Department of Labor and Workforce Development (Board) affirming the decision of the Appeal Tribunal disqualifying her from receiving unemployment benefits from October 9, 2016 through January 21, 2017. Because there is credible evidence in the record to support the Board's determination of Wright's ineligibility for benefits during that period due to her failure to show good cause why she did not comply with reporting requirements in accordance with the Division of Unemployment Benefits (Division) regulations, we affirm.

I

The administrative record reveals the following relevant procedural history and facts.[1] On July 17, 2016, Wright successfully filed a claim for benefits with the Division after being separated from work. On August 19, 2016, the Deputy Director of the Division (Deputy) determined Wright was eligible for benefits. That determination was amended when the Division notified

---

[1] The Appeal Tribunal conducted hearings on April 5, 2017, May 4, 2017, and April 25, 2018.

A-0036-18T1

Wright on or about October 4, 2016, that she was disqualified from receiving benefits for eight weeks because she was discharged from her former employment for simple misconduct connected with the work.[2]

Prior to the disqualification notice, Wright had continued to report to the Division as required until September 10, 2016. According to Wright, she was notified about a meeting with the Division to assess her re-employment efforts, but she was not able to attend. She stated she got lost on the way to the meeting and didn't know where she was, and "called the number of the woman [at the Division.] I think it was a woman[. I]t was a long time ago."[3] She was not able to reach anyone to figure out where she was supposed to be, and she never heard about a meeting again after that.

Knowing she was required to report weekly, Wright claimed she was unable to report online the week after September 10, because she didn't input all her information into the online system. In response to an error message on her computer, she called the Division but was unable to speak to someone, as she got an automated message telling her "to file online from the phone and then

---

[2] A copy of this notification was not provided in the record.

[3] The Appeal Tribunal hearing transcripts contain ellipses, which may suggest a pause in the witnesses' testimony. For the reader's convenience, we have removed them here and throughout this opinion.

[she] found another number on the website."  She called the other number and it continued to ring with no response.  Thereafter, she maintains she tried reporting online a few other times that week and the following week but to no avail. Wright claimed she was unaware she could report by going to a local Division office, and her further attempts to report through the Division's automated system were futile.

To evidence her attempts to report by phone, Wright provided records of her telephone calls from September 23 to September 28, 2016 and January 25 to January 27, 2017.  When asked about this four-month gap, Wright stated:

> I tried online again . . .  a couple of more times until I think around . . . .  [Y]ou want specific dates[,] hold on one second.  Let me see[.] [L]ooking at a calendar. . . . Sunday, Monday[,]  this is the day I called.  So[,]  since I was used to reporting on like Sundays . . .  October 2 . . . I most likely tried again.  You know . . .  I attempted it weekly until I received my notice.
>
>    . . . .
>
> [T]hen it wouldn't even let me like log into the system.
>
>    . . . .
>
> Like I couldn't even log in at one point in time[,] like my information didn't send me to the claim benefits screen.

A-0036-18T1

Wright also testified she felt despondent and experienced anxiety and depression due to her termination and belief that the October 4, 2016 notification advised she was permanently disqualified for benefits. She claimed it was not until her counsel informed her in January 2017, that she learned her disqualification was just for eight weeks. When asked by the claims examiner if her mental state affected her ability to report for benefits, Wright first replied "no . . . it only takes five seconds to write up an email and attach a resume. . . ." In response to the claims examiner's follow-up question seeking clarification about the impact of her alleged anxiety and depression, Wright responded "the only way I can answer this question is did it impact my ability to do so, yes. Did it stop me from doing so[,] it probably would have but like I said . . . I'm a more positive person."

In explaining her sporadic attempts to report after October 10, 2016, Wright replied:

> I want to say . . . this specific date thing is . . . what ties me up because I can tell you month, but it's just those days[.]
>
>     . . . .
>
> [M]y last attempt trying online was in January before I finally reached the number. It was January.
>
>     . . . .

It was between January 17 and . . . 26. I know because that's when I was kind of informed that I could still receive my benefits. So I went online to try and see if I was still able to log in[,] if I was able to get that screen, because if I was able to still receive my benefits than I should be able to log on and go online and continue the process that I had been . . . in like July, and June, and August.

Wright claimed she continued her attempts to report online from November 2016 through January 2017. When asked if the last time she tried to report online was December, Wright stated, "with my personality I most likely probably would have tried on Christmas. . . ."

Regarding her telephone reporting attempts between September 27, 2016 and February 18, 2017, Wright testified:

I know I did. It is just what number did I call 'cause I do recall calling a number and then do recall it not giving me any contact with a human being and then searching the another number[,] receiving another number and finally reaching someone, but[,] what number was it?

. . . .

I'm thinking[,]. . . I'm relating it to other things in my mind because I remember having a phone call conversation and I remember trying to call[,] I want to say around Valentine's Day. [L]ike in the middle of February . . . I was trying to see if I can access the record and give you a phone number that I called, but[,] I do remember calling a number and then that number

A-0036-18T1

didn't pan out and then calling another number which led me to my February[.]

According to the Division, Wright's claim for benefits was reopened as of February 19, 2017 because she reported during the week ending February 25, 2017. Wright later received notice from the Deputy on March 10, 2017, advising her she was ineligible to receive benefits from September 11, 2016 through February 18, 2017 because she did not report. Wright appealed the determination to the Appeal Tribunal.

The ensuing Appeal Tribunal telephonic hearing was adjourned to allow Wright time to obtain phone records. After the continued hearing, the Appeal Tribunal issued a May 9, 2017 decision finding Wright was eligible for benefits from September 11, 2016 through October 8, 2016 but ineligible for benefits from October 9, 2016 through February 18, 2017. Wright's claim was remanded to the Deputy to determine whether Wright was eligible for benefits for the later period. Wright appealed to the Board.

On March 23, 2018, the Board decided additional testimony from Wright was needed and remanded the case to the Appeal Tribunal to "for a hearing and a decision on all issues."

On April 24, 2018, Wright's counsel, emailed the Board claiming it was "acting in this case in a way in which impinges on the regulatory, due process

7

and procedural rights of Ms. Wright, as well as similarly situated claimants with remands." The email was apparently referencing confidential communications the Board shared with the Appeal Tribunal. The record includes an unsigned and undated response, presumably from the Board, stating:

> It has come to our attention that in a matter in which the Board has issued an order of remand for additional testimony, you have requested that the appeals examiner provide you with a copy of the Board of Review worksheet.
>
> We have gone down this road before. Over the years, you have raised this issue again and again and our response has always been the same. The Board, by the wording of its remand order, indicates in general terms to the parties the reason for the need for additional testimony. However, the Board's worksheet, in which it gives instructions and sometimes suggestions to the hearing officer as how to proceed is, as you are aware, off limits to both claimants and employers.
>
> Pursuant to N.J.S.A. 43:21-10(d), the Board supervises the work of the Appeal Tribunal. Moreover, decisions of the Appeal Tribunal that are not appealed become decisions of the Board of Review. N.J.S.A. 43:21-6(c). Consequently, the appeal tribunals are creatures of the Board, and our instructions to the appeal examiners by means of our worksheets are directions to our subordinates, and hence, privileged communications not subject to disclosure to the parties in a benefit dispute.

The next day, April 25, Wright had a telephonic hearing before the Appeal Tribunal. That same day, the Appeal Tribunal issued a decision reiterating its earlier ruling that Wright was eligible for benefits from September 11, 2016 through October 8, 2016; finding Wright's credible testimony demonstrated she had good cause for failing to report during that time period. Wright was also awarded benefits from January 22, 2017 through February 18, 2017, because she attempted to report on January 26, 2017. However, the Appeal Tribunal ruled Wright was ineligible for benefits from October 9, 2016 through January 21, 2017 because her inconsistent testimony failed to establish good cause for not reporting.

The Appeal Tribunal reasoned:

> Although [Wright] testified that she may have made attempts to report for benefits two times a month, she could not provide specific dates of these attempts or the calendar weeks in which these alleged attempts were made. [Wright's] testimony of any attempts to report for benefits after [October 04, 2016] was extremely vague during the initial hearings. [Wright] used language such as "probably" and "may have" when describing alleged attempts to report after [October 04, 2016]. [Wright] admitted that after she received the decision holding her disqualified for benefits on the ground that she was discharged for simple misconduct connected with the work, she believed that the disqualification period was indefinite[,] and she became despondent. During the hearing on [April 25, 2018], when asked when she made attempts to report

A-0036-18T1

for benefits from [October 9, 2016] through [February 18, 2017], [Wright] testified that she remembered making attempts in the beginning of [February 2017], which was her birthday. During that hearing, she did not testify to any attempts made to report for benefits prior to [February 2017]. Thus, her testimony that she made attempts to report for benefits between [October 9, 2016] through [January 21, 2017] was inconsistent and is not found to be credible. Consequently, her contention is rejected.

[Wright] contended that she has shown good cause for failing to report for benefits from [October 09, 2016] through [January 21, 2017] because she became depressed and anxious after she was discharged from her former employer. However, when asked directly if her medical condition made her unable to report for benefits during the time period in question, she testified that she was able to complete this type of small task. It is noted that had [Wright] been unable to report for benefits during that time period, then she would not have met the requirement of being able to work, which would bar her from receipt of benefits. Hence, [Wright's] contention is rejected.

The Appeal Tribunal found there was no good cause for Wright's failure to report after receipt of the October 4, 2016 disqualification notice until January 26, 2017 because the notice was clear that she was disqualified for benefits for only eight-weeks due to her termination for simple misconduct. Wright appealed the decision to the Board.

10

On July 20, 2018, the Board affirmed the Appeal Tribunal's April 25, 2018 decision. Two weeks later, Wright's counsel requested the Board reopen and reconsider its decision.[4] The Board denied the request. This appealed followed.

II

On appeal, Wright argues the Board's decision denying her benefits from October 9, 2016 through January 21, 2017 was incorrect because it did not apply the proper good cause test. To support her claim she was substantially prevented from reporting, as required to find good cause, Wright cites Rivera v. Bd. of Review, 127 N.J. 578, 580-81, 589-90 (1992) (holding the Department of Labor's repayment notification process was inadequate to protect the due process right to appeal the denial of unemployment benefits of a non-English speaking migrant farmworker who lived in Puerto Rico five months a year) and Garzon v. Bd. of Review, 370 N.J. Super. 1, 7-8,10 (App. Div. 2004) (remanding to the Board to allow claimant to show good cause why she filed a late appeal of the Board's dismissal of her claim given the inadequate notice to her that she could present good cause for her late filing).[5] She argues her uncontradicted testimony

---

[4] Wright cited an unpublished decision of this court, which in accordance with our rules has no precedential value. R. 1:36-3.

[5] In addition, Wright relies on an unpublished decision. See R. 1:36-3.

proved by a preponderance of evidence that she attempted to report to the Division but the agency's documented issues with its reporting system thwarted her numerous attempts to report. She further argues her depression and anxiety, triggered by being unemployed and thinking she was disqualified from benefits, are a disability that warrant good cause for not reporting. In addition, she contends the Board's use of confidential communications to the Appeal Tribunal violated state law and her constitutional rights.

The Board argues it did not credit Wright's testimony seeking to establish good cause for failing to report between October 9, 2016 through January 21, 2017. The Board maintains her erroneous belief that she was no longer eligible for benefits, based upon receipt of the October 4, 2016 decision indicating she was disqualified for eight weeks, does not constitute good cause for not reporting. Moreover, the Board asserts Wright's alleged anxiety and depression are irrelevant because she testified she was able to complete "similarly small tasks such as applying for jobs via email." As to Wright's argument regarding confidential communications between the Board and the Appeal Tribunal, the Board contends her assertions are based on documents which may be privileged and therefore are outside the scope of this appeal.

The unemployment benefits sought by Wright are pursuant to the Unemployment Compensation Law (UCL), N.J.S.A. 43:21-1 to -24.30, social legislation enacted to provide benefits to qualified individuals for periods of unemployment so they can maintain purchasing power and limit the serious social consequences of poor relief assistance. N.J.S.A. 43:21-2. In order to be eligible for benefits under the UCL, an unemployed person must file a claim with the Division and continue to report to the Division "in accordance with such regulations as the [D]ivision may prescribe." N.J.S.A. 43:21-4.

Once a claim is approved, it is required that:

> (a) Individuals shall report as directed by the Division as to date, time, and place in person, by telephone, by mail, via an Internet application or as the Division may otherwise prescribe.
>
> (b) An individual who fails to report as directed will be ineligible for benefits unless, pursuant to a fact-finding hearing, it is determined that there is "good cause" for failing to comply. For the purposes of this subchapter, "good cause" means any situation which was substantial and prevented the claimant from reporting as required by the Division.
>
> [N.J.A.C. 12:17-4.1.]

Additionally, N.J.A.C. 12:17-4.3(e) and (h) provides:

> (e) An individual must be in continuous reporting status to be eligible for unemployment benefits. Once an individual is ineligible for benefits because of his or her

failure to comply with reporting requirements for a designated benefit period, he or she may reassert his or her claim for later weeks of unemployment only if the individual contacts the Division within 14 days of the subsequent two-week designated benefit period. An individual who is ineligible for the second designated benefit period for failure to comply shall continue to be ineligible for benefits until such calendar week in which he or she reports or otherwise contacts the Division to claim benefits.

. . . .

(h) A claimant who fails to comply with reporting requirements by any method directed by the Division shall report to the Division to claim benefits. Unless the claimant has "good cause," as defined in N.J.A.C. 12:17-4.1, for failing to report timely by the method directed by the Division, the claimant shall be ineligible for benefits for the designated benefit period.

We discern no reason to conclude the agency misapplied these guidelines or that its ruling was not supported by credible evidence that Wright was ineligible for benefits from October 9, 2016 through January 21, 2017, because she failed to show good cause for not reporting. See Ardan v. Bd. of Review, 231 N.J. 589, 605 (2018) (ruling we are "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue," quoting In re Election Law Enf't Comm'n Advisory Op. No. 001-2008, 201 N.J. 254, 262 (2010)); see also, Brady v. Bd. of Review, 152 N.J. 197, 210 (1997) (holding "[i]f the Board's factual findings are supported 'by sufficient credible evidence,

14

courts are obliged to accept them,'" quoting <u>Self v. Bd. of Review</u>, 91 N.J. 453, 459 (1982), and the agency's decision may not be disturbed unless shown to be arbitrary, capricious, or unreasonable).  Wright's failure to report was not the result of any lack of information provided by the agency as was the situation in <u>Rivera</u> and <u>Garzon</u>.  Nor was she misinformed by the Division.  We find nothing arbitrary, capricious, or unreasonable concerning the rejection of Wright's good cause explanations, which the Board determined was inconsistent and not credible.

Lastly, we do not address Wright's argument that the Board made confidential communications to the Appeal Tribunal in violation of state law and her constitutional rights because they lack sufficient merit to warrant discussion in in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0036-18T1